IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSE DERRICK BOND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1515 |
| | ) | |
| v. | ) | Judge Cercone |
| | ) | Magistrate Judge Bissoon |
| FNU RHODES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Diggs, Gress and Hickman (Doc. 139) be granted. It is further recommended that Plaintiff's Motion for Partial Summary Judgment (Doc. 136) be denied.

### II. REPORT

Jesse Derrick Bond is a state prisoner currently incarcerated in the State Correctional Institution at Greene ("SCI-Greene"). Bond alleges that he was assaulted by prison guards and was thereafter denied medical treatment for injuries sustained during the assault. Defendants Diggs, Gress and Hickman are medical personnel employed at SCI-Greene who allegedly denied Plaintiff medical treatment for a period of 39 days from December 23, 2005, until January 30, 2006. Plaintiff has filed a Motion for Partial Summary Judgment (Doc. 136), and Defendant Diggs, Gress and Hickman have filed a Motion for Summary Judgment (Doc. 139). Responses have been filed and the motions are ripe for disposition.

A. **Factual record**

Plaintiff alleges in his Amended Complaint, and he testified at his deposition, that he was assaulted at SCI-Greene on November 18, 2005, and that this aggravated a pre-existing back injury. He was transferred to another institution for court proceedings on November 22, 2005, and was returned to SCI-Greene on December 19, 2005 (Doc. 141-8, pp. 26-29, 38). Plaintiff had previously been prescribed Motrin and Indocin for complaints of back pain, but Defendant Gress conducted an examination on December 23, 2005, and refused to prescribe any medications (Doc. 141-6, p. 2). Medical records show that Gress reported Plaintiff's subjective complaints upon palpation of his spine and range of motion testing, but that the complaints were not repeated when Plaintiff's attention was diverted (Doc. 141-7, p. 45). Gress believed Plaintiff was malingering and did not require medication (Id., p. 44).

Plaintiff was next seen by Defendant Hickman in his cell on January 3, 2006, and he did not appear to be in acute distress while moving about (Doc. 141-7, p. 44). On January 6, 2006, Defendant Diggs examined Plaintiff, and listed his complaint as "intermittent" pain, but upon examination there were no objective findings of limitation (Doc. 141-7, p. 43).

On January 12, 2006, Plaintiff was again seen by Gress for complaints of back pain, and she scheduled Plaintiff to be examined by the prison physician, Dr. Jin (Doc. 141-7, p. 43). In a grievance dated January 13, 2006, Plaintiff reported that Gress told him during the January 12, 2006 examination that he could himself obtain ibuprofen from the commissary if he was in pain (Doc. 141-6, p. 2). Plaintiff complained that this was against the "medical co-pay" policy, but he never asserted that he was unable to obtain ibuprofen on his own (Id.).

Dr. Jin attempted to examine Plaintiff on January 18, 2006, but Plaintiff had been moved to a different cell block, so the appointment was rescheduled (Doc. 141-7, p. 41). Dr. Jin examined Plaintiff on January 30, 2006, and found normal range of motion in Plaintiff's lumbar spine and noted Plaintiff's complaints as being "intermittent pain" and "minimal" discomfort (Doc. 141-7, pp. 41-42). An X-ray of Plaintiff's spine taken on January 27, 2006, was normal (Doc. 141-5, p. 45). Dr. Jin prescribed strengthening exercises and ibuprofen "as needed" for 30 days (Id.). Plaintiff has not sued Dr. Jin, and instead argues that Dr. Jin's prescription of ibuprofen establishes that Plaintiff's medical condition required medication.

Plaintiff's medication was changed from ibuprofen to Tylenol on March 31, 2006, due to a concern over Plaintiff's continuing use of ibuprofen, and his prescription for any pain reliever was ultimately discontinued altogether in April, 2006 (Doc. 141-7, p. 39).

**B. Legal Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to present ". . . specific facts showing that there is a *genuine issue for trial*" Fed. Rule Civ. Proc. 56(e) (emphasis added), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

Bond asserts liability against the Defendants pursuant to 42 U.S.C. §1983. To state a claim under Section 1983, Bond must meet two threshold requirements. He must show: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

**B. Analysis**

Bond's claims against Defendants Gress, Hickman and Diggs are premised upon the Eighth Amendment of the United States Constitution, which protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection is enforced against the states through the Fourteenth Amendment and it guarantees incarcerated persons humane conditions of confinement. Generally, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In the context of a claimed denial of medical treatment, an inmate must show two elements to demonstrate a violation of his rights as protected by the Eighth Amendment: 1) that he was suffering from a "serious" medical need; and 2) that the prison officials were "deliberately indifferent" to the serious medical need. Id.

The first element requires a plaintiff to demonstrate a medical need that is objectively "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person easily would recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

Further, the denial of medical treatment must result in "an unnecessary and wanton infliction of pain" or be "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-106. "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105.

Plaintiff asserts that he was denied "all" treatment for his back pain until January 30, 2006, when Dr. Jin prescribed treatment in the form of ibuprofen. Plaintiff, in fact, uses Dr. Jin's prescription of medication as proof that his condition was serious and required treatment *in the form of a prescription for ibuprofen*. Ibuprofen, however, was readily available to Plaintiff from the commissary at all times, but Plaintiff chose not to purchase it for himself. Even if, as Plaintiff asserts, ibuprofen was a necessary treatment for his medical condition, no Defendant prevented Plaintiff from obtaining that treatment. Thus, while Plaintiff can prove that he suffered some level of discomfort from not being given ibuprofen from December 23, 2005, through January 30, 2006, he cannot establish that his discomfort was caused by Defendants. Defendants are entitled to summary judgment.

Further, not every ache or pain suffered by a prisoner requires medical attention, although in this case the record is clear that Plaintiff was seen numerous times for complaints of back pain. Plaintiff received medical attention for his complaints. What Plaintiff did not receive was a free, mild analgesic for a sore back. Each medical examination of Plaintiff during the relevant time period, including Dr. Jin's examination, revealed no objective findings to support Plaintiff's subjective complaints of intermittent back pain. The refusal to dispense "bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not by its refusal violate the Constitution." Cooper v. Casey, 97 F.3d 914, 916 (7th Cir.1996);

see also, Gibson v. McEvers, 631 F.2d 95 (7th Cir.1980). In considering whether an injury is serious, the court must consider whether "denial or delay causes an inmate to suffer a life-long handicap or permanent loss." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) *cert. denied* 486 U.S.1006 (1988). At most, Plaintiff can establish that he suffered some discomfort for a short period of time until seen by Dr. Jin. That discomfort was so minor, however, that Plaintiff himself chose not to obtain medication on his own. Plaintiff's claim does not rise to constitutional magnitude.

Additionally, even where there is a serious medical condition, a prisoner also must present facts from which a jury could conclude that the defendant prison officials subjectively acted with a sufficiently culpable state of mind, because "in the medical context, an inadvertent failure to provide medical care" does not rise to the level of deliberate indifference. Gamble, 429 U.S. at 105-106. However, an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable. Id.

Simply put, Defendants indisputably did not ignore Plaintiff's complaints of pain; indeed, they examined Plaintiff based upon these complaints. Rather, Defendants simply did not believe Plaintiff because he did not exhibit any objective signs of weakness or limitation in movement. The fact that Dr. Jin later prescribed a mild anti-inflammatory and pain reliever is not sufficient to permit a jury to infer that Defendants' earlier failure to provide similar, mild treatments was the result of deliberate indifference. Compare, Laws v. Lawson, 2008 WL 4414371 at 4 (S.D.Tex., 2008) (Prisoner's claims concerning disagreements among medical personnel about whether to use ibuprofen and the appropriate dosage do not show deliberate indifference to serious medical needs.). O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir.1990) (repeatedly failing

to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pain is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain). In fact, where treatment is offered, the mere allegation of a difference of between a patient and a doctor, or between two medical professionals, does not amount to "deliberate indifference to a serious medical need." White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990) ("there may ... be several acceptable ways to treat an illness."). Therefore, Plaintiff's claims of deliberate indifference fail on this basis as well.

### III. CONCLUSION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Diggs, Gress and Hickman (Doc. 139) be granted. It is further recommended that Plaintiff's Motion Partial Summary Judgment (Docs. 136) be denied.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 15, 2009.

s/ Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

Date: May 29, 2009

cc:
JESSE DERRICK BOND BZ-2493
S.C.I. at Greene
175 Progress Drive
Waynesburg, PA 15370